UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY FREMONT,

    Petitioner,

v.

WILLIAM P. BARR,
Attorney General of the United States,

THOMAS E. FEELEY,
Field Office Director for Detention and
Removal Buffalo Field Office, Bureau of
Immigration and Customs Enforcement

DEPARTMENT OF HOMELAND
SECURITY,

JEFFREY J. SEARLS,
Facility Director, Buffalo Federal
Detention Facility

    Respondents.

18-CV-1128
DECISION AND ORDER

---

Gary Fremont is a citizen of Haiti who is detained while he awaits judicial review of his final order of removal. He has been in federal immigration detention for about twelve months without an individualized hearing regarding his risk of flight or dangerousness. On October 12, 2018, Fremont filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York. Docket Item 1. On February 11, 2019, the respondents moved to dismiss. Docket Items 7, 8. Fremont has not responded to that motion, and the time to do so has now expired. *See* Docket Item 4.

For the reasons that follow, this Court denies the respondents' motion to dismiss and conditionally grants Fremont's petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Fremont is a 36-year-old man who is a native and citizen of Haiti. Docket Item 7-1 at 2; Docket Item 1 at 3. He was admitted to the United States at the Miami International Airport as a derivative asylee[1] on or about January 27, 2006. Docket Item 7-1 at 2. On March 14, 2006, Fremont became a lawful permanent resident. *Id.*

In April 2009, Fremont pleaded nolo contendere in a Florida state court to one count of attempted armed robbery with a deadly weapon. *Id.*; Docket Item 7-2 at 12. He was sentenced to a term of incarceration of 210 days and three years' probation. Docket Item 7-1 at 2.

On March 19, 2018, Canadian officials denied Fremont entry into Canada at Champlain, New York, where he attempted to claim asylum. *Id.* at 3; Docket Item 7-2 at 9. The Canadian Border Services Agency returned Fremont to the United States under the Safe Third Country Agreement.[2] Docket Item 7-1 at 3. DHS then issued Fremont a

---

[1] Aliens may apply for asylum as provided for by statute. Derivative asylum "involve[s] the grant of asylum status to a spouse or minor child (but not a parent) who accompanies an alien already eligible for asylum status, even though the spouse or child might not otherwise be eligible for asylum." *Kane v. Holder*, 581 F.3d 231, 241 n.36 (5th Cir. 2009).

[2] The Agreement Between the Government of the United States of America and the Government of Canada for the Cooperation in the Examination of Refugee Status

Notice to Appear and determined that Fremont would be detained pending a final resolution of his removal proceedings. Docket Item 7-2 at 7.

On September 11, 2018, Immigration Judge Steven J. Connelly ordered Fremont removed from the United States to Haiti. *Id.* at 2. On January 15, 2019, the Board of Immigration Appeals ("BIA") dismissed Fremont's appeal. Docket Item 7-1 at 4. On February 12, 2019, Fremont, represented by counsel, filed a petition for review in the United States Court of Appeals for the Second Circuit. *See Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 1. He also moved to stay his removal. *Id.*, Docket Item 10. Even though the Second Circuit has not yet ruled on Fremont's motion for a stay, DHS may not execute his removal because of the forbearance agreement between DHS and the Second Circuit. *See Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 191 (W.D.N.Y. 2010).

Fremont remains in custody at the Buffalo Federal Detention Facility.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Fremont is validly detained under 8

---

Claims from Nationals of Third Countries, or "Safe Third Country Agreement," is "intended to prevent forum-shopping by asylum seekers, and to promote the orderly handling of asylum claims along the United States-Canadian border." *United States v. Malenge*, 294 F. App'x 642, 645 (2d Cir. 2008).

U.S.C. § 1231. Docket Item 8 at 5-7.[3] Fremont makes three arguments to the contrary. Docket Item 1. First, he claims that his detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 7. Second, he argues that "his prolonged detention more than six months violates his right to substantive due process under the Fifth Amendment." *Id.* at 7. Third, he argues that "his prolonged detention more than six months without a meaningful review of his detention in accordance with federal regulations violates his right to procedural due process under the Fifth Amendment." *Id.* at 8. He also asks this Court to order the respondents "not to remove Petitioner from the jurisdiction of this Court during the duration of the consideration of this petition." *Id.*

Because Fremont is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

I. **STATUTORY BASIS FOR DETENTION**

The first issue is the statutory basis for Fremont's detention. The government contends that Fremont's detention is governed by 8 U.S.C. § 1231(a). Docket Item 8 at 5. That is because when the government filed its motion to dismiss, Fremont's "order of removal [had become] final"—on January 15, 2019, when the BIA affirmed the Immigration Judge's removal order. Since that time, however, Fremont filed a petition for review of that decision and a motion to stay his removal with the Second Circuit.

---

[3] The government submitted its memorandum on February 11, 2019, the day before Fremont filed his petition for judicial review with the Second Circuit. *See* Docket Item 8; *Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 1.

4

*See Fremont v. Barr*, No. 19-369 (2d Cir.).  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove an alien who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied."  *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019).

8 U.S.C. § 1231(a)(1)(B) provides that if a "removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order" signals the beginning of an alien's removal period under § 1231(a).  This Court has held that until a Second Circuit panel rules on an immigrant's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the alien" for the purposes of the statute.  *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4; *see also Hereda v. Shanahan*, 245 F. Supp. 3d 521, 524 (S.D.N.Y. 2017) (vacated on appeal as moot) (and cases cited therein).

Therefore, even if the respondents may have been correct at the time of their filing, Fremont now is detained under 8 U.S.C. § 1226(c).[4]  Because Fremont is not detained under § 1231(a), this Court rejects his argument that his detention violates that

---

[4] The government asserts, and Fremont does not dispute, that Fremont was detained as a criminal alien under 8 U.S.C. § 1226(c), as opposed to § 1226(a), before his final order of removal.  Docket Item 8 at 6.  This Court therefore presumes, for the purposes of this decision and order, that the respondents are holding Fremont under § 1226(c).  And the fact that Fremont was taken into DHS custody *not* when he was released from criminal custody, but instead much later after attempting to enter Canada, Docket Item 7-1 at 3, is apparently of no moment in answering that question.  *See Nielsen v. Preap*, ___ U.S. ___, 2019 WL 1245517, at *11 (2019).

5

provision as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## II.     DUE PROCESS

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982). At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

6

### A. Substantive Due Process

Fremont argues that his detention violates his right to substantive due process. Docket Item 1 at 7-8. He has been detained by DHS since March 19, 2018, about a year. Nevertheless, this Court cannot say detention that long necessarily violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under § 1226(c) may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. What is more, Fremont's detention here has been prolonged primarily by the pending judicial review of his claims. *See Sanusi*, 100 F. App'x at 51. Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here. *See Salerno*, 481 U.S. at 747 n.4.

### B. Procedural Due Process

Fremont also challenges "his prolonged detention more than six months without a meaningful review" as violating "his right to procedural due process." Docket Item 1 at 8. The Due Process Clause is not offended by the mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore*, 538 U.S. at 513 (emphasis added). But "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if

7

the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

In *Demore*, the Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.* "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018).

"In light of the substantial uncertainty surrounding the detention provisions in [§] 1226(c)," *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans*, 2019 WL 955353, at *5. "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1. Fremont's Unreasonably Prolonged Detention Without a Hearing

"The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (cited in *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018)). "[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause" several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). For example, this Court has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Fremont has been in DHS custody since March 19, 2018, about a year, longer than the four-month average period contemplated in *Demore*. *See* 538 U.S. at 529. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *See Muse*, 2018 WL 4466052, at *4 (and cases cited therein); *see also Jennings*, 138 S. Ct. at 864 (2018) (Breyer, J., dissenting) (individuals with mental illness "dangerous to themselves or to others may be confined involuntarily . . . [with] the right to review the circumstances at least annually"). In fact, courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis. *See Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25,

2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case"); *but see Sigal v. Searls*, 2018 WL 5831326, at *7 (W.D.N.Y. Nov. 7, 2018) (detention over sixteen months without bond hearing not unreasonable). The length of Fremont's twelve-month detention therefore supports his argument that his detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. But neither party has supplied the Court with any information about the conditions that Fremont faces at the Buffalo Federal Detention Facility. So this Court cannot address that factor.

Third, courts consider whether either side is responsible for the delay. The Second Circuit has found that this factor weighs against finding detention unreasonable when an alien has "'substantially prolonged his stay by abusing the processes provided to him,'" but not when "an immigrant . . . simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

Here, DHS served Fremont with a Notice to Appear for removal from the United States on March 20, 2018, the day after he was placed in immigration detention. Docket Item 7-1 at 3. On May 9, 2018, DHS served Fremont with an amended Notice to Appear, superseding the earlier notice, that dropped one charge of removability but added another. *Id.*; Docket Item 7-2 at 4-6. On September 11, 2018, an immigration

10

judge ordered Fremont removed to Haiti.  Docket Item 7-2 at 2.  On October 11, 2018, Fremont "timely appeal[ed]" that decision to the BIA, which rendered a decision on January 15, 2019.  *Id.* at 23.  Fremont then appealed that decision to the Second Circuit on February 12, 2019.  *Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 1.

On these facts, the only delay arguably attributable to Fremont since he was taken into federal custody in March 2018 is the time he took to file his appeals—that is, less than two months of his twelve-month detention (about thirty days before his appeal to the BIA and about twenty-eight days before his appeal to the Second Circuit).  During the other ten months, Fremont sat in detention awaiting decisions from the immigration judge, the BIA, and now the Second Circuit.  Therefore, Fremont does not bear responsibility for the delay, and this factor does not make his continued detention reasonable.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to weigh the merits of Fremont's claims pending before the Second Circuit; in any event, neither side has included much about the substantive issues in its briefs to this Court.[5]

After weighing all these factors, this Court finds that Fremont's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

---

[5] The Court does note, for what it is worth, that Fremont is represented by counsel in his Second Circuit proceeding.  *See Fremont v. Barr*, No. 19-369 (2d Cir.).

### 2. The Process Due to Fremont

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.*, at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Fremont's continued detention without an individualized hearing fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall v. Martin*, 467 U.S. 253, 263 (1984).

Fremont's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."[6] *Addington v. Texas*, 441 U.S. 418, 427 (1979). Fremont has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)

---

[6] Considering Fremont's pro se status in this proceeding, and in light of the time-sensitive nature of habeas proceedings alleging the invalidity of unreasonably prolonged immigration detention, this Court has looked to Fremont's filings in his Second Circuit proceeding for the limited purpose of improving its understanding of his liberty interests. But even without this information, this Court would presume that Fremont's liberty interests in freedom from detention in the United States have great weight for the reasons explained in note 7, *infra*.

12

(emphasis in original), Fremont has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit.[7]

Furthermore, Fremont's father, five siblings, and seven children are United States citizens living not in Haiti, where the government wishes to send him, but instead in Florida and Louisiana, where Fremont has lived since the age of nineteen as a permanent resident. *Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 10-2 at 2, 17. Thus, if Fremont chose not to challenge his removal, he would "lose the right to rejoin h[is] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34; *see also Ms. L. v. U.S. Immigration and Customs Enf't.*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018) (family separation as part of immigration enforcement likely to violate due process).

Additionally, Fremont apparently has been diagnosed with a serious mental illness, and he contends that "being deported to Haiti is likely to mean he is detained as a criminal, dosed with powerful, non-therapeutic sedatives and left to languish in squalid conditions." *Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 10-2 at 17.[8]  Fremont's

---

[7] This Court has yet to closely analyze unreasonably prolonged detention where a petitioner's liberty interests were as weak as the Court described in *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999).  Indeed, in each case raised before this Court, the petitioner demonstrated strong liberty interests in his freedom in the United States as opposed to in the nation to which he or she might be removed. *See, e.g., Hemans v. Searls*, 2019 WL 955353, at *7 (W.D.N.Y. Feb. 27, 2019); *Hechavarria v. Sessions*, 2018 WL 5776421, at *7-*8 (W.D.N.Y. Nov. 2, 2018).  And this makes sense. This Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong.

[8] Fremont cites a World Health Organization article and an article from the Journal of Global Health for this proposition. *Fremont v. Barr*, No. 19-369 (2d Cir.), Docket Item 10-2 at 17 n.25.

13

concerns about the impact of his mental health status on his treatment in Haiti increases the gravity of his interests.

This Court recognizes that the government's interest in detaining Fremont also may be strong. The government does not contend in any of its filings before this Court that Fremont is dangerous or a flight risk, and the Court cannot derive from anything in the record that DHS or any government entity has taken that position. But Fremont is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[A]liens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[9] *Id.* at 846. Thus, the statute reflects a congressional purpose in mandating the detention of criminal aliens to reduce risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[10]). "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight

---

[9] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018), not applicable here.

[10] The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing. *Demore v. Kim*, 538 U.S. 510, 519 n.4 (2003) ("Although the Attorney General had the authority to release these aliens on bond, it is not clear that *all* of the aliens released were in fact given individualized bond hearings.") (emphasis in original).

highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

Finally, this Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Fremont's liberty interests. Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846. Now that Fremont's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (internal citation omitted). When the government seeks the civil detention of a person to effectuate a compelling regulatory purpose, balancing the liberty interest at stake against the government's interests requires the government to show by clear and convincing evidence that detention is necessary to serve a compelling interest. *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *Hemans*, 2019 WL 955353, at \*8; *Hechavarria v. Sessions*, 2018 WL 5776421, at \*8 (W.D.N.Y. Nov. 2, 2018); *see also Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 424) ("clear and convincing evidence" standard applies "'when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'"). That standard applies equally here. To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment

[is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[11] "This requires consideration of less restrictive alternatives to detention. *See id*. *Cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Fremont's § 1226(c) detention has been unreasonably prolonged, and § 1226(c) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him. The statute therefore is unconstitutional as applied to him, and his continued detention violates the Due Process Clause. Fremont therefore must be released unless, no later than fourteen days from the date of this decision, the government demonstrates by clear and convincing evidence before a neutral decision maker that Fremont's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decision maker also must consider—and must address in any decision—whether there is clear and convincing evidence that no less

---

[11] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable for flight risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes.

### III. LIMIT ON TRANSFERRING FREMONT

Fremont has asked this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition." Docket Item 1 at 8. The respondents contend that this request is not subject to judicial review. Docket Item 8 at 7-8.

Now that this Court has conditionally granted Fremont's writ, his jurisdictional concerns are not unreasonable. After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)). But "[it] is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where [Fremont] is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

## **CONCLUSION**

For the reasons stated above, the respondents' motion to dismiss, Docket Item 7, is DENIED and Fremont's petition, Docket Item 1, is conditionally GRANTED. **Within fourteen calendar days of the date of this Decision and Order**, the government must release Fremont from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Fremont's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention would also address the government's interests. In other words, the decision maker must find that no condition or combination of conditions of release can reasonably assure Fremont's appearance and the safety of the community or any persons—that is, even with conditions, Fremont presents an identified and articulable risk of flight or threat to an individual or the community. Fremont's request to order the respondents not to transfer him out of the territorial jurisdiction of this Court is DENIED.

SO ORDERED.

Dated: April 2, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE